1
2
3
4
5

UNITED STATES DISTRICT COURT

6

NORTHERN DISTRICT OF CALIFORNIA

7

SAN JOSE DIVISION

8

9   JOSEPH E. STEVENS,                    Case No.   5:13-cv-03877-EJD

10              Plaintiff,                **ORDER ADOPTING PETITIONER'S**
                                          **PROPOSED FINDINGS AND**
11        v.                              **CONCLUSIONS OF LAW**

12   JERRY BEARD, et al.,                 Re: Dkt. Nos. 69, 70

13              Defendants.

14          On March 21, 2007, a jury found Petitioner guilty of two counts of murder (Cal. Penal

15   Code § 187) and found true enhancement allegations that Petitioner intentionally discharged a

16   firearm that proximately caused death or great bodily injury (Cal. Penal Code § 12022.53(d)) and

17   the special circumstance of multiple murder (Cal. Penal Code § 190.2(a)(3)).  On July 13, 2007,

18   the trial court sentenced Petitioner to two life terms without the possibility of parole, two

19   consecutive 25 years to life terms on the firearm enhancements, plus three years for the assault

20   conviction.  On March 9, 2012, the California Court of Appeal, First Appellate District, affirmed

21   the judgment in an unpublished opinion.  Dkt. No. 13-3.  The California Supreme Court denied

22   review on June 13, 2012.  Dkt. No. 13-4.  Following extensive briefing, this Court concluded that

23   the state Court of Appeal's decision was contrary to and involved an unreasonable application of

24   clearly established federal law and was based on an unreasonable determination of the facts.

25
26
27

Case No.: 5:13-cv-03877-EJD
ORDER ADOPTING PETITIONER'S PROPOSED FINDINGS AND CONCLUSIONS OF
28   LAW

United States District Court
Northern District of California

1    On August 22, 2018, this Court granted Petitioner's petition for writ of habeas corpus and

2    ordered the verdict set aside.  Dkt. No. 17.[1]  The Court then granted the State's request for an

3    evidentiary hearing to determine whether Juror #12's statement was prejudicial.  In so granting,

4    this Court observed that "the Court granted the petition because the Court of Appeal did not

5    attempt to determine the effect of Juror No. 12's racists statements."  Dkt. No. 17 at 15–18.  As

6    this court noted, the exact context of Juror No. 12's alleged statements were unclear, and thus a

7    hearing was needed to determine the context of the statements.  To help determine the context of

8    the statements, the Court ordered discovery and investigation of the jurors.  The Parties were

9    permitted to contact jurors for interview, and the District Attorney's Office Inspector contacted all

10   surviving jurors (one had passed since the time of the trial).  *See* Dkt. No. 67.

11   On April 27, 2022, this Court held an evidentiary hearing.  Juror No. 5 and Juror No. 12

12   were deposed a few months before the evidentiary hearing.  Prior to the hearing, this Court

13   reviewed the record of the trial, the video depositions of Juror No. 5 and Juror No. 12 and the

14   respective reporter's transcripts, the stipulations regarding the expected testimony from the San

15   Francisco County District Attorney's Office Inspector Rami Khoury, and the DMV photo of Juror

16   No. 12.  *See* Dkt. No. 67.  After review of these documents, and the transcript of the evidentiary

17   hearing, the Court finds that Juror No. 5 credibly reported that during deliberations, while the

18   jurors were discussing the language and culture in the area surrounding the Potrero Hill housing

19   projects (the scene of the underlying murders), Juror No. 12 said, "You can't call these people

20   niggers.  They'll just shoot you."  Juror No. 5 informed the trial court in 2007 that Juror No. 12

21   made this statement.  Juror No. 5 testified in his subsequent deposition that Juror No. 12 made the

22   statement as "an aside" and described it as dropping a "bomb in the middle of the discussion."

23   Dkt. No. 67 at ECF 46.  Following interviews by the District Attorney's Office Inspector, no juror

24   other than Juror No. 5 recalled hearing the racial epithet during deliberations or recalled hearing

25   any other improper remarks during deliberation.  Dkt No. 67 at ECF 4.  During her 2021

26

27   _____

[1] For a more detailed recitation of the facts, see Docket Number 17.

Case No.: 5:13-cv-03877-EJD

28   ORDER ADOPTING PETITIONER'S PROPOSED FINDINGS AND CONCLUSIONS OF LAW

United States District Court
Northern District of California

1    deposition, Juror No. 12 denied making the comment during deliberations and testified that she is

2    not biased against black people and is married to an African American man.  Dkt. No. 67 at ECF

3    21.

4            The Sixth Amendment guarantees criminal defendants a verdict by impartial, indifferent

5    jurors.  The bias of or prejudice of even a single juror violates Petitioner's right to a fair trial.  *See,*

6    *e.g.*, *United States v. Hendrix*, 549 F.2d 1225, 1227 (9th Cir. 1977); *Press-Enterprise Co. v.*

7    *Superior Court of Cal.*, 464 U.S. 501, 508 (1984) ("No right ranks higher than the right of the

8    accused to a fair trial.").  Automatic reversal is necessary when a structural error deprives the

9    defendant of "basic protections" without which the "criminal trial cannot reliably serve its

10   function as a vehicle for determination of guilt or innocence, and no criminal punishment may be

11   regarded as fundamentally fair."  *Rose v. Clark*, 478 U.S. 570, 577–78 (1986).  Time and again,

12   the Supreme Court and the Ninth Circuit have recognized that racial bias in the courtroom is a

13   structural error because it "raises serious questions as to the fairness of the proceedings conducted

14   there," "mars the integrity of the judicial system[,] and prevents the idea of democratic

15   government from becoming a reality."  *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 628

16   (1991).  Cognizant that "[t]he duty to confront racial animus in the justice system is not the

17   legislature's alone," *Pena-Rodriguez v. Colorado*, 137 S. Ct. 855, 867 (2017), the Supreme Court

18   and other federal courts repeatedly have held that the injection of racial prejudice into criminal

19   proceedings constitutes a structural error that requires no showing of prejudice.  Illustrations

20   include:

21       • **Presence of Racially–Biased Juror**: The presence of a racially biased juror "cannot be
22         harmless; the error requires a new trial without a showing of actual prejudice."  *Dyer v.*
           *Calderon*, 151 F.3d 970, 973 n.2 (9th Cir. 1998) (en banc).
23

24       • **Racially–Biased Judge**: Structural error occurs when a judge with racial bias against a
           defendant presides at his trial.  *Norris v. United States*, 820 F.3d 1261, 1266 (11th Cir.
25         2016); *see also Tumey v. Ohio*, 273 U.S. 510, 535 (1927).

26       • **Racially–Biased Prosecutor**: A prosecutor's deliberate decision to charge a defendant
           on account of his race is structural error.  *See Vasquez v. Hillery*, 474 U.S. 254, 264
27

28   Case No.: 5:13-cv-03877-EJD
     ORDER ADOPTING PETITIONER'S PROPOSED FINDINGS AND CONCLUSIONS OF
     LAW

United States District Court
Northern District of California

1   (1986) (citing *United States v. Batchelder*, 442 U.S. 114, 125 & n.9 (1979)).

2       The "unmistakable principle" underlying these precedents is that racial discrimination in

3   the justice system is intolerable.  *Pena-Rodriguez*, 137 S. Ct. at 868.  The injection of racial bias

4   into a criminal trial is a structural defect because the trial "cannot reliably serve its function as a

5   vehicle for the determination of guilt or innocence, and no criminal punishment [that results] may

6   be regarded as fundamentally fair."  *Rose*, 478 U.S. at 577–78.  Racial bias within the courtroom

7   "raises serious questions as to the fairness of the proceedings conducted there" and mars the

8   integrity of the judicial system.  *Edmonson*, 500 U.S. at 628; *see also Batson v. Kentucky*, 476

9   U.S. 79, 87 (1986) (noting that racism in jury selection "undermine[s] public confidence in the

10  fairness of our system of justice").

11      The Court finds that the racially inappropriate statement was made—a finding supported

12  by the temporality of Juror No. 5's reporting, the additional problems that arose with Juror No. 12

13  during the trial, and Juror No. 5's refreshed recollection of the incident years later.  While the

14  State argues that the statement was a single remark in the context of a long trial, this ignores the

15  inherent racism in the word "nigger."  Perhaps more problematic was Juror No. 12's use of "these

16  people," as if Petitioner is a different class of human being.  Juror No. 12's statement demonstrates

17  a deep bias, and the Court must assume prejudice and error.  Indeed, an individual under the

18  influence of such personal prejudice is "presumed to have bias on his mind which will prevent an

19  impartial decision of the case."  Even while this individual may declare that notwithstanding these

20  prejudices he can listen to the evidence and be governed by it, "*the law will not trust him.*"  *United*

21  *States v. Burr*, 25 F. Cas. 49, 50 (D. Va. 1807) (emphasis added).  For this reason, Juror No. 12's

22  bias constitutes structural error.

23      Following the evidentiary hearing, the Court invited the Parties to submit proposed

24  findings and conclusions of law.  The Court **ADOPTS** Petitioner's proposed findings and

25  conclusions of law.  Accordingly, the Court affirms its earlier decision to vacate the judgment

26  against Petitioner and remand the case to the trial court.  Unless the State initiates trial proceedings

27
28

United States District Court
Northern District of California

within ninety days, this Court orders that Petitioner be released from state custody.  The Clerk shall close the file.

   **IT IS SO ORDERED.**

Dated: September 29, 2022

_____
EDWARD J. DAVILA
United States District Judge